UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CILA FAY HOLT o/b/o J.H.,

        Plaintiff,

v.                                                Case No. 5:07-cv-486-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

        Defendant.
_____/

## ORDER

Cila Fay Holt, on behalf of her minor daughter J.H., appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") terminating her disability insurance benefits. (Doc. 1.) The Commissioner has answered (Doc. 11), and both parties have filed briefs outlining their respective positions. (Docs. 14 & 18.) For the reasons discussed below the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

On February 15, 1998, Cila Fay Holt, on behalf of her minor daughter,[1] protectively filed an application for children's SSI benefits alleging that Plaintiff became disabled on October 10, 1993. (R. 162-74.) After denials at the initial and reconsideration levels, Plaintiff requested a hearing before an administrative law judge (ALJ). On May 5, 1998, ALJ Brown issued a partially favorable decision finding that Plaintiff was disabled as of February 15, 1998 because her impairments functionally equaled the requirements of Section 112.02 of the Listings. (R. 41-50.)

---

[1] Even though this action is being brought by Cila Fay Holt on behalf of her minor daughter, J.H. the Court will refer to J.H. as the Plaintiff.

On April 20, 2004, pursuant to the Social Security Administration's continuing disability review procedures, it was determined that Plaintiff was no longer disabled as of September 1, 2003 due to medical improvement. (R. 78-79.) Plaintiff appealed that determination by requesting an ALJ hearing contending that she was still disabled. (R. 75-76.) On August 25, 2005, ALJ Lyman issued a unfavorable decision. (R. 61-67.) Plaintiff requested that the Appeals Council review this decision. On July 28, 2006, the Appeals Council remanded the case to an ALJ for further proceedings. (R. 125-27.) On March 7, 2007, ALJ Stacy held a supplemental hearing. (R. 371-95.) On June 15, 2007, ALJ Stacy issued a decision finding that the Plaintiff was not disabled as of September 1, 2003, and thus, no longer eligible for SSI payments. (R. 16-30.) The Appeals Council denied Plaintiff's Request for Review (R. 10-12), making the ALJ's hearing decision the final decision of the Commissioner. On December 4, 2007, Plaintiff filed an appeal to this Court. (Doc. 1.)

## II. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3] In reviewing the Commissioner's decision, the district court must view the

---

[2] See 42 U.S.C. § 405(g) (2003).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

2

evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4]

Congress has empowered the district court to affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause.[5] Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[6] The district court will reverse a Commissioner's decision on plenary review, however, if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[7] Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.[8]

### III. **THE LAW**

The law considers a child disabled, for the purposes of children's SSI benefits, if that child has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death

---

[4] Foote, 67 F.3d at 1560; *accord*, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] 42 U.S.C. § 405(g) (sentence four).

[6] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[7] Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[8] Bowen v. Heckler, 748 F.2d 629, 631, 636-37 (11th Cir. 1994).

3

or which has lasted or can be expected to last for a continuous period of not less than 12 months."[9] However, no child who "engages in substantial gainful activity . . . may be considered to be disabled."[10] A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."[11] The statute does not define "marked and severe functional limitations."

In determining the severity of impairments, the Commissioner must consider the combined effect and combined impact of all of the individual's impairments.[12] In determining the disability of a child, the Commissioner must make reasonable efforts to ensure that a qualified pediatrician or other specialist evaluates the case.[13]

In accordance with Congressional intent, the regulations define "marked and severe functional limitations" as "a level of severity that meets, medically equals, or functionally equals the listings."[14] The regulations set forth a three-part sequential test the Commissioner must follow when determining disability in children.[15] First, the

---

[9] 42 U.S.C. § 1382c(a)(3)(C)(I) (2003).

[10] 42 U.S.C. § 1382c(a)(3)(C)(ii).

[11] 42 U.S.C. § 1382c(a)(3)(D).

[12] 42 U.S.C. § 1382c(a)(3)(G).

[13] 42 U.S.C. § 1382c(a)(3)(I).

[14] 20 C.F.R. § 416.902 (2003)(all further references to 20 C.F.R. will be to the 2003 version unless otherwise specified).

[15] 20 C.F.R. § 416.924(a).

4

Commissioner must find that the child is not performing substantial gainful activity.[16] Second, if the child is not working, it must be found that the child suffers from an impairment or combination of impairments that is severe.[17] Third, if there are severe impairments, it must then be found that the child's impairments meet, medically equal, or functionally equal the listings.[18] If the child 's impairments do not meet or medically equal a listing, the Commissioner must then consider whether the child has an impairment or combination of impairments functionally equivalent to a listing.

Provisions for determining functional equivalence are established under 20 C.F.R. § 416.926a. Stated generally, to functionally equal a listed impairment, a child must demonstrate an "extreme" limitation in one domain of functioning, or show a "marked" limitation in two domains of functioning.[19] There are six domains of functioning to be considered: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.[20] A "marked" limitation in a domain means that the child's impairment "interferes seriously with [their] ability to independently initiate, sustain, or complete activities."[21] An

---

[16] 20 C.F.R. § 416.924(b).

[17] 20 C.F.R. § 416.924(c).

[18] 20 C.F.R. § 416.924(d).

[19] 20 C.F.R. § 416.926a(a).

[20] 20 C.F.R. § 416.926a(b).

[21] 20 C.F.R. § 416.926a(e)(2).

5

"extreme" limitation in a domain means that the child's impairment "interferes very seriously with [their] ability to independently initiate, sustain, or complete activities."[22]

Where as here, a child has been found disabled, that child's eligibility for continued disability benefits is reviewed periodically.[23] At Step One, consideration first will be given to whether there has been medical improvement in the child's impairment.[24] Medical improvement is "any decrease in the severity of your impairment(s) which was present at the time of the most recent favorable decision that you were disabled or continued to be disabled."[25] If there has been no medical improvement, the child will be found to be still disabled.[26] If there has been medical improvement, the ALJ moves to Step 2 and considers "whether the impairment(s) you had at the time of our most recent favorable determination or decision now meets or medically or functionally equals the severity of the listing it met or equaled at that time.[27] If so, the child will be found still disabled, unless certain exceptions apply.[28] If not, the ALJ proceeds to Step 3 and determines if the Plaintiff is currently disabled under the rules in 20 C.F.R. §416.924(c) and (d), considering all the impairments that the Plaintiff

---

[22] 20 C.F.R. § 416.926a(e)(3).

[23] 20 C.F.R. § 416.994a(a).

[24] 20 C.F.R. § 416.994a(a)(1).

[25] 20 C.F.R. § 416.994a(c).

[26] 20 C.F.R. § 416.994a(1).

[27] 20 C.F.R. § 416.994a(1).

[28] 20 C.F.R. § 416.994a(a)(1).

6

has now, including any not present or not considered at the most recent favorable determination.

## IV. **SUMMARY OF THE RECORD EVIDENCE**

Plaintiff, born on October 10, 1993, was thirteen at the time of the hearing. (R. 377.) At the hearing, Plaintiff testified that she is in regular classes at school, has never failed a grade, and has never been suspended. (R. 377, 383.) She testified that on her most recent report card she got an F in reading and math; a D in social studies; a C in intensive reading; a B in language arts; and an A in science. (R. 378-79.) Plaintiff testified that she has friends at home and school and gets along with some of her classmates. (R. 379, 382.) Plaintiff testified that she goes on walks and talks on the phone with friends. (R. 379-80.) She testified that she likes to play sports and video games, watch television, and ride her bike. (R. 380.) Plaintiff testified that doctors told her to be careful while playing sports and limit her running. (R. 381.) Plaintiff reported going to the emergency room in 2006 for asthma. (R. 381-82.) Plaintiff's mother testified that Plaintiff takes Flovent, Zyrtec and Albuterol but Plaintiff testified that there are no side effects. (R. 381.) Plaintiff's mother agreed with her daughter's testimony except that she clarified that Plaintiff does not usually play sports. (R. 384.) Plaintiff's mother testified that Plaintiff's most disabling impairment is asthma, followed by her skin condition. (R. 388-89.) She testified that Plaintiff's skin condition "affects her life in general" and results in depression. (R. 389.) Plaintiff's mother testified that Plaintiff was receiving counseling at school for her depression and that Plaintiff had an upcoming appointment scheduled with a psychiatrist from the Centers. (R. 391.)

Plaintiff has a history of atopic dermatitis and was treated for this condition since January 2002 by Mary F. Stoner, M.D. (R. 317.) Dr. Stoner treated Plaintiff with various lotions. On July 31, 1995, Dr. Stoner noted that Plaintiff was a chronic "no show" and when she was treated properly at home she has "very acceptable, well controlled atopic dermatitis." (R. 316.)

Plaintiff also has a history of asthma. Plaintiff was treated at Shands Pediatric Pulmonary Clinic beginning in November 2000. On November 21, 2000, Plaintiff's pulmonary function test was normal. (R. 329.) Plaintiff returned on October 29, 2002 and reported doing well over the past six months with no exacerbations, ER visits, or prednisone courses. (R. 322-23.) The impression was "mild to moderate persistent asthma . . . currently well controlled." Plaintiff continued Flovent, Singulair, Albuterol, and Zyrtec. On April 15, 2003, Plaintiff returned to the Clinic (R. 320-21) and once again reported no problems over the past six months. Plaintiff's examination was largely normal and pulmonary testing showed a very mild reversible obstructive defect. (R. 318-19.) It was noted that Plaintiff's asthma "is still active but well controlled" and no changes were made in treatment.

On August 8, 2006, Plaintiff returned to the Shands Pediatric Pulmonary Clinic. (R. 368-70.) Plaintiff reported going to the emergency room in December due to an exacerbation of asthma symptoms. Plaintiff was given prednisone. Plaintiff had not been using Albuterol correctly and she had been using Flovent without an AeroChamber. Plaintiff also reported that she had missed some of her Flovent doses and "notices that when she starts wheezing again if she goes back on her Flovent, that she does much better." Pulmonary function testing revealed a strong post-

8

bronchodilator response, mild obstruction and decline. The impression was moderate persistent asthma with a "little bit of decline on pulmonary function testing."

Progress notes from Plaintiff's pediatrician (dated June 2, 2002 through October, 10, 2003) show largely normal examinations, other than Plaintiff's scaly skin and reported joint pain. (R. 336-45.)

On February 28, 2005, Ms. Julie G. Newbold, Plaintiff's 5th grade reading and writing teacher, completed a Teacher Questionnaire. (R. 237-44.) Ms. Newbold noted problems in the domain of "Acquiring And Using Information" including a serious problem providing organized oral explanations and adequate descriptions; problems in the domain of "Interacting And Relating With Others" including very serious problems playing cooperatively with other children, making and keeping friends, seeking attention appropriately, and asking permission appropriately and serious problems interpreting meaning of facial expression, body language, hints, sarcasm; problems in the domain of "Attending And Completing Tasks" including serious problems in completing work accurately without careless mistakes and working without distracting self or others; no problems in the domain of "Moving About And Manipulating Objects"; some problems in "Caring For Herself"; and self-esteem issues related to her skin disorder in the domain of "Health And Physical Well-Being."

On May 2, 2005, Plaintiff was referred to Linda S. Bojarski, Psy.D. for a general clinical evaluation with mental status. (R. 356-58.) Plaintiff reported that she participated in Girl Scouts, had learned to play the flute in school, and attends church regularly. Plaintiff reported enjoying basketball and soccer, watching television, riding

her bike, and playing with her Play Station. She performs all activities of daily living independently, except that her mother helps with her hair and she does her chores.

Dr. Bojarski noted that Plaintiff's speech was clear and logical with no evidence of a thought disorder; eye contact was good and affect was modulated and appropriate to the topic under discussion; and Plaintiff was pleasant and cooperative. Plaintiff was oriented in all three spheres. She recalled six digits forward and four in reverse, which was inconsistent with immediate memory deficits and she performed mental control exercises quickly and without error, which was inconsistent with concentration deficits. Plaintiff described her usual mood as "very mad because people are always picking on me because of my skin." Plaintiff's mother reported that Plaintiff is teased for her skin disorder, she tries to hard to make friends, and she tends to be withdrawn. She said that she does not like herself and reported crying three to four times per week and feels guilty about her friends.

Dr. Bojarski's diagnostic impression was "Depressive Disorder, Not Otherwise Specified." Dr. Bojarski completed a "Childhood Functional Assessment" finding that Plaintiff had a marked limitation in "Interacting and Relating With Others", less than marked limitations in "Attending and Completing Tasks" and "Health & Physical Well-Being"; and no limitations in "Acquiring & Using Information", "Moving About & Manipulating Objects" and "Self Care."

On December 1, 2006, Plaintiff was seen by Samer Choksi, M.D. for medical evaluation. (R. 360-63.) Plaintiff's physical examination was largely normal except for diffuse ichthyosis, which was "severe in the bilateral lower extremities." Dr. Choksi noted that Plaintiff was alert, her affect and mood tone were normal and her intellectual

10

functioning was normal. Pulmonary function testing revealed normal spirometric values. Dr. Choksi completed a "Childhood Functional Assessment" finding that Plaintiff had less than marked limitations in "Acquiring and Using Information", "Interacting and Relating With Others", "Attending and Completing Tasks", and "Health & Physical Well-Being"; and no limitations in "Moving About & Manipulating Objects" and "Self-Care." (R. 367.)

In evaluating the Plaintiff's application for SSI, the Commissioner employed two different reviewers to complete a Childhood Disability Evaluation Form (the "Form") about the Plaintiff. The first Form, which was completed on September 28, 2003, reflects that Plaintiff's impairments are severe but that those impairments do not meet, medically equal or functionally equal the listings. (R. 330-35) The reviewer found a less than marked limitation in the domain of "Health And Physical Well-Being" and no limitations in the other domains.

The second Form, completed on January 20, 2004, shows that Plaintiff has severe impairments, but that those impairments do not meet, medically equal, or functionally equal the severity of a listing. (R. 346-51.) Additionally, the second Form reflects less than marked limitations in the domains of "Acquiring and Using Information", "Attending and Completing Tasks", "Interacting and Relating with Others", and "Health and Physical Well-Being" and no limitation in the domain of "Caring For Yourself." (R. 260.)

The ALJ found that the most recent favorable decision finding Plaintiff disabled was the decision dated May 5, 1998 – known as the "comparison point decision" or "CPD." At the time of the CPD, Plaintiff had asthma and atopic dermatitis since birth.

Plaintiff's skin disorder was found to functionally equal listing 112.02 of 20 CFR Part 404, Subpart P, Appendix 1. The ALJ found that medical improvement occurred as of September 1, 2003. The ALJ further found that as of September 1, 2003, the impairments that Plaintiff had at the time of CPD did not meet, medically equal or functionally equal a listed impairment. The ALJ then found that the impairments considered at the CPD – asthma and atopic dermatitis – were the only impairments present as of September 1, 2003. In reaching this conclusion, the ALJ found that Plaintiff's mental impairment was not severe. The ALJ then found that as of September 1, 2003, Plaintiff did not have an impairment or combination of impairments that met, medically equaled or functionally equaled a listed impairment. Accordingly, the ALJ found that Plaintiff's disability ended as of September 1, 2003.

## V. **DISCUSSION**

Plaintiff raises only one argument on appeal – i.e., that the ALJ erred at Step 3 by finding that Plaintiff's depressive disorder was not a severe impairment.[29] At Step 3 in a child cessation case, the ALJ must determine if the Plaintiff is currently disabled under the rules of 20 C.F.R. §416.924(c) and (d), considering all the impairments that the Plaintiff has now, including any not present or not considered at the CPD.

Plaintiff asserts that her depressive disorder, in combination with her other impairments, were sufficiently severe to meet or equal a listing.[30] Plaintiff provides very

---

[29] The only mention of this argument was in the heading to the Argument section which states "The ALJ Erred In His Decision At Step 3 Because Substantial Evidence Establishes That The Claimant's Depressive Disorder Is A Severe Impairment." Doc. 14

[30] Plaintiff actually argues that the ALJ "erred at Step 3 of his decision because no reasonable person would find that Plaintiff J.H.'s ichthyosis and her depressive disorder and mental impairments in
(continued...)

12

little argument in support of this position. The Commissioner construes Plaintiff's argument narrowly and contends that Plaintiff does not challenge the ALJ's findings on medical improvement or functional equivalence. While the Court agrees that Plaintiff has not raised medical improvement, which is a Step 1 inquiry,[31] Plaintiff's argument should be read more broadly to include also a challenge to functional equivalence.

### A. The ALJ's Finding That Plaintiff's Mental Impairment Is Not Severe Is Supported By Substantial Record Evidence

The ALJ found that as of September 1, 2003, Plaintiff had two severe impairments – asthma and atopic dermatitis. (R. 30.) The ALJ also found that Plaintiff's mental impairment was not severe and/or disabling. In reaching this conclusion, the ALJ, discussed Dr. Bojarski's diagnosis of depressive disorder, NOS but concluded that it was not a severe and/or disabling impairment because the medical record fails to show any psychiatric/psychological treatment and because the claimant's mental impairment is related to her skin disorder.

Other than citing lengthy portions of the consultative psychological evaluation performed by Dr. Bojarski, Plaintiff does not offer any argument as to why the ALJ's finding was in error. Moreover, Dr. Bojarski's own observations and mental status examination findings do not show that Plaintiff's depressive disorder was severe. Plaintiff told Dr. Bojarski that she did not like herself, cried several times a week and felt "very mad because people are always picking on me because of my skin" and her

---

[30](...continued)
combination, meet or equal a listing." Doc. 14, page 9.

[31] Plaintiff explains in her memorandum that medical improvement is determined at step one in a child cessation case. Doc. 14, pages 5-6. Here, Plaintiff's challenge is at Step 3 – i.e. the determination as to whether Plaintiff is currently disabled considering her current impairments.

mother stated she was "teased about her skin disorder, she tries too hard to make friends, and she tends to be withdrawn." (R. 358.) However, Dr. Bojarski noted that Plaintiff's speech was clear and logical; there was no evidence of a thought disorder; she was pleasant and appropriate; eye contact was good; affect was modulated and appropriate to the topic under consideration; there was no evidence of immediate memory deficits; and Plaintiff "performed mental control exercises quickly and without error, inconsistent with concentration deficits." Moreover, Dr. Choksi performed a consultative evaluation on December 1, 2006 and reported that Plaintiff was alert and oriented, her affect and mood tone were normal and her intellectual functioning appeared normal.

Plaintiff also cites the teacher questionnaire completed by Julie G. Newbold, Plaintiff's 5th grade teacher. As an initial matter, Ms. Newbold, who is a teacher, is not an "acceptable medical source" and therefore, is not qualified to provide evidence to establish whether Plaintiff has a medically determinable impairment.[32] Moreover, the ALJ specifically addressed Ms. Newbold's opinions but accorded them little weight because they were not supported by school records. Plaintiff is in regular classes and has never failed a grade and there is no school evidence of disciplinary actions or referrals to school counselors or psychologists for behavioral problems.

Plaintiff's mother testified that Plaintiff was receiving counseling at school for her depression and that Plaintiff had an upcoming appointment scheduled with a psychiatrist from the Centers. (R. 391.) However, there is no evidence in the record to

---

[32] See 20 C.F.R. §416.913(a).

support this testimony. Moreover, Plaintiff's daily activities do not support a severe depressive impairment. While Plaintiff's physical activities are limited to some degree by asthma, she reports taking walks, enjoying basketball and soccer and riding her bike. Plaintiff also reports participating in Girl Scouts, playing the flute in school, attending church regularly, watching television, and playing with her Play Station. In addition, Plaintiff performs all activities of daily living independently (except that her mother helps with her hair) and she does her chores.

Accordingly, the ALJ's finding that Plaintiff's mental impairment was not severe was supported by substantial record evidence.

### B. Plaintiff's Impairments Do Not Meet, Medically Equal Or Functionally Equal A Listing

Plaintiff contends that her impairments in combination meet or equal a listing. However, even assuming that Plaintiff had a severe depressive disorder, Plaintiff fails to show how it, either alone or in combination with her other impairments, meets or equals the criteria for disability under a listed impairment.[33] Indeed, Plaintiff has not even identified any listing that she purportedly meets or equals.[34]

While the ALJ found that Plaintiff's impairments did not meet or medically equal a listing, his focus was functional equivalence. In order to functionally equal a listed

---

[33] 20 C.F.R. 416.912(a); Brady v. Heckler, 724 F.2d 914, 918 (11th Cir. 1984.)

[34] The Commissioner contends that Listing 112.04 (mood disorders) is the most relevant to Plaintiff's claim. This listing requires medically documented persistence of a "major depressive syndrome" and evidence of at least two of the following: (1) marked impairment in age-appropriate cognitive/ communicative function; (2) marked impairment in age-appropriate social functioning; (3) marked impairment in age appropriate personal functioning; or (4) marked difficulties in maintaining concentration, persistence, or pace. Plaintiff has failed to identify evidence to support a finding that Plaintiff meets this Listing.

15

impairment, a child must demonstrate an "extreme" limitation in one domain of functioning, or show a "marked" limitation in two domains of functioning. Here, the ALJ found that as of September 1, 2003, the Plaintiff's impairments did not result in either a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain of functioning. Thus, the ALJ found that Plaintiff's impairments did not functionally equal a listing.

Plaintiff does not discuss how the ALJ erred in his analysis of functional equivalence. In fact, "Interacting and Relating With Others" is the only domain that Plaintiff even mentions in her Memorandum; and Plaintiff merely notes (without any discussion) two pieces of evidence which might support a finding of marked limitation in this domain.

The domain of "Interacting And Relating With Others" considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others.[35] The ALJ found that Plaintiff had less than marked limitation in this domain.

The ALJ articulated two legitimate reasons to support this finding. First, the ALJ noted that while Ms. Newbold reported very serious problems playing cooperatively with other children, making and keeping friends, and seeking attention and expressing anger appropriately, there was no school evidence showing any disciplinary action taken and/or referral to a school counselor or psychologist for behavioral problems. Second,

---

[35] See 20 C.F.R. §416.926a(i.)

the ALJ found that Dr. Bojarski's consultative opinion that Plaintiff had a marked limitation interacting and relating with others was inconsistent with her description of Plaintiff as "a pleasant and cooperative young female without abnormal behavior and/or thought disorder." Instead, the ALJ accorded full weight to the more recent opinion of another consultative doctor – Dr. Choksi – who concluded that Plaintiff had less than marked limitation in this domain. The ALJ's finding was also supported by the Childhood Disability Evaluations completed by the state agency physicians, one of whom found no limitation while the other found less than a marked limitation.

Other than quoting lengthy portions of Dr. Bojarski's evaluation and Ms. Newbold's teacher questionnaire, Plaintiff fails to explain how the ALJ erred in evaluating this domain. Moreover, even if Plaintiff had a marked limitation in her ability to interact and relate with others, this alone would not be sufficient to establish disability. In order to functionally equal a listed impairment, a child must demonstrate an "extreme" limitation in one domain of functioning, or show a "marked" limitation in two domains of functioning. Plaintiff has not identified (or even suggested) any other domain in which she has a marked or an extreme limitation.[36]

Plaintiff does not discuss the other five domains in her memorandum; and thus does not specifically challenge the ALJ's findings as to any of these domains. Nevertheless, the Court briefly will discuss each of the five domains below.

The domain of "Acquiring and Using Information" considers how well a child is able to acquire or learn information, and how well a child uses the information she has

---

[36] 20 C.F.R. § 416.926a(a).

learned.[37] The ALJ's finding that Plaintiff had less than marked limitation in this domain is supported by substantial record evidence. While Ms. Newbold reported some difficulties in this area, the ALJ pointed out that Plaintiff was attending regular classes and had not been referred nor did she require special education services for a learning problem. Moreover, the ALJ's finding was consistent with the opinions of Dr. Bojarski,[38] Dr. Choksi and the state agency physicians.

The domain of "Attending and Completing Tasks" considers how well a child is able to focus and maintain attention.[39] The ALJ found that Plaintiff had less than marked limitation in this domain. While Ms. Newbold reported some problems in this area, Plaintiff did not require special education services and there is no school evidence showing disciplinary action taken and/or referral to a school counselor or psychologist for behavioral problems. Moreover, the ALJ's conclusion is consistent with the opinions of Dr. Bojarski, Dr. Choksi and the state agency doctors.

The ALJ found no limitation in the domain of "Moving About and Manipulating Objects" which considers how well a child is able to move her body from one place to another and how a child moves and manipulates objects.[40] This conclusion was supported by the opinions of Ms. Newbold, Dr. Bojarski, and Dr. Choksi, as well as Plaintiff's own reports that she plays the flute, enjoys soccer and basketball, rides her bike, and can perform household chores.

---

[37] See 20 C.F.R. §416.926a(g).

[38] Dr. Bojarski actually found that Plaintiff had no limitation in this domain.

[39] See 20 C.F.R. §416.926a(h).

[40] See 20 C.F.R. §416.926a(j).

18

The ALJ did not find any limitation in the domain of "Caring For Yourself" which considers how well a child maintains a healthy emotional and physical state including how well a child satisfies her physical and emotional wants and needs in appropriate ways and how the child copes with stress and changes in the environment and whether the child takes care of her own health, possessions, and living area.[41] This conclusion was supported by the opinions of Dr. Bojarski, Dr. Choksi and the state agency doctors. Moreover, Plaintiff reported that she could perform independently her activities of daily living.

Finally, the domain of "Health and Physical Well-Being" considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects.[42] The ALJ found that Plaintiff had less than marked limitation in this domain. The ALJ noted that Plaintiff's asthma condition had been reported as well-controlled with medications and that was supported by the medical records from Shands Pediatric Pulmonary Center and the evaluation and pulmonary function test performed by Dr. Choksi. Moreover, the finding was consistent with the opinions of Dr. Bojarski, Dr. Choksi and the state agency physicians.

Accordingly, the ALJ's finding that as of September 1, 2003 Plaintiff's impairments did not meet, medically equal or functionally equal a listing is supported by substantial record evidence.

---

[41] See 20 C.F.R. §416.926a(k).

[42] See 20 C.F.R. §416.926a(l).

19

## VI. CONCLUSION

In view of the foregoing, the decision of the Commissioner is due to be **AFFIRMED**. The Clerk is directed to enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on this 23rd day of March, 2009.

GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel